IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MARY BETH ORR, *Executor of the Estate of Thomas L. Orr, II*, | ) ) ) ) |
| Plaintiff, | ) Civil Action No. 7:20-cv-00673 ) |
| v. | ) **MEMORANDUM OPINION** ) |
| NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY, *et al.*, | ) By:   Hon. Thomas T. Cullen ) United States District Judge ) ) |
| Defendants. | ) ) |

On September 10, 2019, Kenneth Inger slammed his Volvo S70 sedan into the back of Thomas L. Orr, II's minivan while Orr was stopped at a red light. Orr died in the crash. Inger's insurance carrier settled with Orr's estate for Inger's policy limits. But this was still hundreds of thousands of dollars short of Orr's coverage limit. So Orr's estate filed claims with Orr's insurers, Defendants Nationwide Property and Casualty Insurance Company and Nationwide Mutual Insurance Company (collectively, "Nationwide"), for the difference. Nationwide denied those claims, and Orr's estate sued. Both parties have moved for summary judgment, arguing that the policies' plain language supports their respective positions regarding coverage (or a lack thereof).[1]

For the reasons below, Defendants' motion for summary judgment (ECF No. 20) will be denied and Plaintiff's motion for partial summary judgment (ECF No. 22) will be granted.

---

[1] After carefully reviewing the summary judgment briefs, the authorities cited, and the relevant policy provisions, the court determined that a hearing would not aid its decision of the determinative legal issues.

## I. BACKGROUND

In September 2019, Orr stopped his vehicle at a traffic light in Roanoke County, Virginia. (Defs.' Mem. Supp. Summ. J. at 3 [ECF No. 21].) While Orr was stopped, Inger crashed his sedan into the back of Orr's minivan, killing Orr. (*Id.*) The parties agree that Orr's damages as a result of the crash exceeded $1,500,000. (Pl.'s Resp. Defs.' Req. for Admis. ¶ 20 [ECF No. 20-1].)

At the time of the crash, Orr held two insurance policies: an automobile insurance policy (the "Auto Policy" (ECF No. 20-2)) and an umbrella insurance policy (the "Umbrella Policy" (ECF No. 20-3)), through different Nationwide affiliates (collectively "the Nationwide policies").[2] (Pl.'s Resp. Defs.' Req. for Admis. ¶¶ 2, 5 [ECF No. 23-1].) His Auto Policy provided $500,000 in underinsured and underinsured motorist ("UM")[3] coverage. (Auto Policy at 5.) And his Umbrella Policy gave him an additional $1,000,000 of UM coverage. (Umbrella Policy at 4.)

At that same time, Inger held two insurance policies through another insurance company. (Pl.'s Resp. Defs.' Req. for Admis. ¶¶ 13–15.) Those policies provided him with $1,250,000 of coverage for his accident with Orr, $250,000 from an automobile insurance policy and $1,000,000 from an umbrella policy. (*Id.* ¶ 15.) Eventually, Orr's estate accepted a $1,250,000 wrongful-death settlement from Inger's insurer. (*Id.*)

---

[2] Defendant Nationwide Property and Casualty Insurance Company carried the Auto Policy. (Pl.'s Resp. Defs.' Req. for Admis. ¶ 2 [ECF No. 23-1].) Defendant Nationwide Mutual Insurance Company carried the Umbrella Policy. (*Id.* ¶ 6.)

[3] In this opinion, the abbreviation "UM" refers interchangeably to "uninsured motorist," "underinsured motorist," and "underinsured and uninsured motorist."

Orr's estate then turned to its own insurer, Nationwide, to recover Orr's remaining damages. At the time of the accident, the two Nationwide policies provided Orr with $1,500,000 in UM insurance coverage. Since Inger's insurer only covered $1,250,000, Orr's estate filed a claim under each policy for the $250,000 balance.

Nationwide denied the claims. The company reasoned that the wrongful-death settlement was worth $1,250,000; that this settlement was greater than the $500,000 limit for UM insurance in Orr's Auto Policy; that Orr's estate therefore could not collect from the underlying Auto Policy; and that, because Orr's estate had not exhausted the Auto Policy, the estate was unable to collect from Nationwide under Orr's Umbrella Policy. (*See* State Ct. R. at 13–19 [ECF No. 1-1].)

Orr's estate disagreed with this logic—and the denial—and sued Nationwide in Roanoke County Circuit Court. Defendants removed and filed an answer. The parties have conducted discovery, and the matter is before the court on Defendants' motion for summary judgment (ECF No. 20) and Plaintiff's motion for partial summary judgment (ECF No. 22).

## II.   STANDARD OF REVIEW

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

### III. ANALYSIS

Virginia law applies to both the Nationwide policies. A federal court sitting in diversity must apply the forum state's choice-of-law rules. *Connor v. Covil Corp.*, 996 F.3d 143, 146 n.1 (4th Cir. 2021). Virginia's choice-of-law rules govern this diversity action. Under those rules, courts determine where the contract was delivered, and apply the law of that place. *Erie Ins. Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 355 n.5 (Va. 2019). Here, the parties agree that Nationwide delivered the relevant policies in Virginia. (Pl.'s Resp. Defs.' Req. for Admis. ¶ 10.) So the court will apply Virginia law.

"The canons of construction that generally govern contracts also apply to insurance policies specifically." *Erie Ins. Exch.*, 822 S.E.2d at 354. Courts interpret contracts according to the parties' intentions as set forth in the document's text. *Id.* If the text's plain meaning conflicts with a statutory directive, the statute controls. *See id.* at 354–55; *see also Bratton v. Selective Ins. Co. of Am.*, 776 S.E.2d 775, 782–84 (Va. 2015) (interpreting policy terms in light of Virginia precedent interpreting the UM statute).

Virginia's UM statute governs the court's interpretation of the Nationwide policies. Va. Code Ann. § 38.2-2206. Under that statute, once an insurer issues a policy containing UM insurance, the insurer becomes obligated to cover its insured's bodily injuries caused by the operation of an underinsured motor vehicle, to the extent that vehicle is underinsured. *See id.* § 38.2-2206(A). UM coverage comes into play whenever the at-fault driver has less insurance coverage than the injured driver has UM coverage and the injured driver's damages exceed the at-fault driver's coverage. *See id.* § 38.2-2206(B).

Here, the parties agree that Orr's damages exceeded $1,500,000. It is also undisputed that the Nationwide policies provided Orr with up to $1,500,000 in UM coverage. (*See* Auto Policy at 5 ($500,000); Umbrella Policy at 4 ($1,000,000).) Inger's insurance policies provided him with $1,250,000 in coverage, and Orr's estate received that amount in the wrongful-death settlement. (*See* Pl.'s Resp. Defs.' Req. for Admis. ¶ 15.) So, because the settlement amount Orr received from Inger was less than Orr's UM coverage under the Nationwide policies, the companies must pay Orr's estate the difference—$250,000.

Nationwide raises two arguments to get around this application of the UM statute, but neither is persuasive. First, Nationwide cites two Virginia Circuit Court decisions for the proposition that "umbrella policies, like the Umbrella Policy here, are not required to provide [UM] coverage, and that to the extent such coverage is provided, such coverage exists 'voluntarily.'" (*See* Defs.' Mem. Supp. Summ. J. at 8–9 (citing *MacDougall v. Hartford Insurance Group*, 61 Va. Cir. 181 (2003) and *Dailey v. United States Fiduciary & Guaranty Co.*, 24 Va. Cir. 214 (1991)).) This argument is meritless.

Although Virginia allows insurers to sell umbrella policies without UM coverage, Nationwide mistakes this for permission to withhold UM insurance benefits under umbrella policies that provide them. To be sure, Virginia allows insurers to sell umbrella policies without UM insurance. *See* Va. Code Ann. § 38.2-2206(J). And the umbrella policies considered in Nationwide's cited cases did not contain UM insurance coverage. *See MacDougall*, 61 Va. Cir. at *8–9; *Dailey*, 24 Va. Cir. at *2–5. But Orr's Umbrella Policy *does* provide UM insurance coverage. The policy explicitly sets its limit for UM insurance at $1,000,000 per occurrence. (Umbrella Policy at 4.) And it lists the conditions of coverage under an all-caps and bolded heading that reads "UNINSURED AND UNDERINSURED MOTORIST COVERAGE ENDORSEMENT." (*Id.* at 27.) Neither Virginia's UM statute nor Nationwide's cited cases gives Nationwide the power to deny claims for the UM benefits its insureds have purchased.

Nationwide's second argument is more nuanced. Orr's estate received more from the wrongful-death settlement than its Auto Policy provided in UM coverage. Nationwide argues that, because this settlement displaced Orr's estate's recovery under the Auto Policy, the Auto Policy was never exhausted.[4] And exhausting the Auto Policy is a precondition for collecting under the Umbrella Policy. (Defs.' Mem. Supp. Summ. J. at 15–16.)

This misreads the relevant policies. The Umbrella Policy explicitly provides UM coverage for "damages in excess of the sum of [t]he amount received from your required underlying [UM] coverage; and [t]he total amount received because of the loss from, or on behalf of, the liable party; but not less than the amount of such underlying limits." (Umbrella

---

[4] Plaintiff maintains that the Auto Policy is unexhausted and available to help pay any judgment in this case. (*See* Pl.'s Mem. Supp. Partial Summ. J. at 11 [ECF No. 23].) The court does not need to reach this issue to resolve these motions.

Policy at 27.) Here, Orr's estate has damages in excess of $1,500,00, received $0 from his underlying UM coverage, and received $1,250,000 on behalf of Inger. Under the plain terms of its own Umbrella Policy, Nationwide is obligated to pay the difference: $250,000.

It does not matter that Orr's estate never collected benefits from the Auto Policy. Nationwide contends that the Umbrella Policy does not apply because Orr's losses were not "payable by [his] underlying coverage." (Defs.' Mem. Supp. Summ. J. at 15 (quoting the Umbrella Policy at 27).) But this position conflates "payable" benefits with "paid" benefits; even though Orr's benefits were not paid, they were still payable. Nationwide itself concedes that Orr's Auto Policy applied to his damages. (*Id.* at 15–16.) Orr's damages, then, are "losses that are payable by [his] underlying coverage," exactly as the Umbrella Policy requires. (Umbrella Policy at 27.)

## IV. CONCLUSION

For the reasons above, Defendants' motion for summary judgment (ECF No. 20) will be denied and Plaintiff's motion for partial summary judgment (ECF No. 22) will be granted.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties and all counsel of record.

**ENTERED** this 15th day of February, 2022.

/s/ *Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE